THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SANDRA VASQUEZ-GARCIA,

    Plaintiff,

vs.                                                          Civ. No. 24-443 JCH/LF

CENTURION, LLC; CENTURION CORRECTIONAL
HEALTHCARE OF NEW MEXICO, LLC; MHM
HEALTH PROFESSIONALS, INC.; WEXFORD
HEALTH SOURCES, INC.; SUMMIT FOOD SERVICE,
LLC; ALISHA TAFOYA LUCERO, NM SECRETARY
FOR DEPARTMENT OF CORRECTIONS, in her
individual capacity; WENCE ASONGANYI, NMCD
HEALTH SERVICES ADMINISTRATOR, in his
individual capacity; ORION STRADFORD, NMCD
BUREAU CHIEF, in his individual capacity; MICHAEL
HILDENBRANDT, WEXFORD DIRECTOR OF
OPERATIONS, in his individual capacity; DR. KESHAB
PAUDEL, WEXFORD REGIONAL MEDICAL
DIRECTOR, in his individual capacity; SARAH
CARTWRIGHT, WEXFORD REGIONAL DIRECTOR OF
NURSING, in her individual capacity; DEANNI WOOD,
WEXFORD REGIONAL MANAGER OF WNMCF, in her
individual capacity; STEVEN WHEELER, in his individual
capacity; ROCK WELCH, in his individual capacity;
JEFFREY KELLER, in his individual capacity; ANGELA
GOEHRING, in her individual capacity; KAREN RILEY,
in her individual capacity; and JOHNNIE LAMBERT, in
her individual capacity,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This case arises from Plaintiff's claim that she did not receive proper medical care while she was incarcerated in the State of New Mexico. In this Memorandum Opinion and Order, the Court addresses six motions to dismiss: (1) a motion by Defendant Wexford Health Sources, Inc.

("Wexford") **[Doc. 11]**[1] to dismiss on grounds of statute of limitations, immunity, and Rule 12(b)(6); (2) a motion by Defendants Alisha Tafoya Lucero, Wence Asonganyi, and Orion Stradford ("the NMCD Defendants") **[Doc. 16]** to dismiss based on statute of limitations, Rule 12(b)(6), and qualified immunity; (3) a motion by Centurion Correctional Healthcare of New Mexico, LLC, **[Doc. 21]**[2] to dismiss based on the statute of limitations, (4) a motion by Defendant Summit Food Service, LLC, ("Summit") **[Doc. 27]** to dismiss based on statute of limitations and Rule 12(b)(6), (5) Defendants Jeffery Keller, Rock Welch, Angela Goehring, Karen Riley, and Johnnie Lambert's motion to dismiss for failure to state a claim **[Doc. 55]**, and (6) Defendants Hildenbrandt, Paudel, Cartwright, and Wood 's Motion to Dismiss in Lieu of an Answer **[Doc. 61].** Plaintiff responded to the first five of these motions [Docs. 24, 28, 29, 33, and 62], and the movants filed replies [Docs. 32, 30, 34, 39, and 64]. Each of the first four motions raises the threshold issue of whether Plaintiffs' claims are barred by the statute of limitations. Therefore, it appears that all defendants except MHM Health Professionals, Inc. ("MHM") and Steven Wheeler—neither of whom has been served—have filed or joined motions to dismiss on statute of limitations grounds. After reviewing those materials and the applicable legal authorities, the Court concludes that Plaintiff's claims are indeed barred by the statute of limitations and should be dismissed. Accordingly, the Court need not reach any of the other issues raised in the motions.

## BACKGROUND

---

[1] Defendants Michael Hildenbrandt, Keshab Paudel, Sarah Cartwright, and Deannie Wood have joined in this motion to dismiss, including the arguments in favor of dismissal on statute of limitations grounds. *See* Doc. 61 at 3.

[2] Defendants Angela Goehring, Rock Welch, Jeffery Keller, Johnnie Lambert, Karen Riley, and Centurion, LLC (*see* Docs. 38 and 54) have joined in this motion to dismiss on statute of limitations grounds.

Plaintiff Sandra Vasquez-Garcia brings this § 1983 civil rights claim arising from her incarceration for a period of years at Western New Mexico Correctional Facility ("WNMCF"). She alleges that on September 22, 2017, while she was incarcerated, "she had noted diagnoses of diabetes, asthma, thyroid disorder, and blood pressure issues." Doc. 1 at 10-11, ¶ 30. Plaintiff also alleges that on October 2, 2017, medical staff from Defendant Centurion[3], and then later Wexford[4], diagnosed her with having "uncontrolled hyperglycemia." *Id*. at ¶ 31. However, in her Complaint Plaintiff alleges that Defendants repeatedly failed to properly treat her medical conditions, which included diabetes and kidney disease. These failures included not giving her prescribed diabetes medications, giving her the wrong medications, failing to give her the proper dosages of medications, failing to regularly test and document her blood sugar levels, failing to prescribe and provide her with a diabetic diet, failing to keep her blood sugar at acceptable levels, and at times failing to give her any medical care at all. *Id*., passim. Plaintiff also asserts that Defendants failed to properly treat pain and vision loss in her right eye. *Id*., passim. Plaintiff alleges that these failures to provide her with proper medical care continued even as her condition worsened, resulting in the exacerbation of her diabetes, kidney disease, and eye disease. *Id*., passim.

More specifically, Plaintiff alleges that because Centurion medical staff had failed to keep her blood glucose levels at an acceptable rate, on January 8, 2019, she was diagnosed with renal tubular acidosis, or failure of the kidneys to properly remove acids from the blood into the urine, and type four hyperkalemia. Doc. 1 at 11 ¶ 36. On March 8, 2019, Centurion medical staff

---

[3] In her Complaint, Plaintiff refers to both Centurion, LLC, and Centurion Correctional Healthcare of New Mexico, LLC, collectively as "Centurion." In this Memorandum Opinion and Order, this Court will do the same.

[4] Plaintiff alleges that Wexford replaced Centurion as the medical provider at Western New Mexico Correctional Facility on or around October 19, 2019. Doc. 1 at 14, ¶ 47.

diagnosed Plaintiff with diabetic mellitus nephrotic syndrome, noting that she had swelling legs and weight gain. *Id*. at 12, ¶ 39. On June 26, 2019, Plaintiff's blood glucose levels were high and she had been experiencing blurred vision for two days. Centurion medical staff diagnosed her with type-two diabetes with proliferative diabetic retinopathy with macular edema and vitreous hemorrhage in her right eye. *Id*. at 13, ¶ 43. However, medical staff merely increased the dosage of Plaintiff's Lantus prescription but did not refer her to a medical specialist capable of treating her conditions. *Id*. On September 10, 2019, Plaintiff told Centurion medical staff that she was seeing air bubbles in her eye, but they merely continued her on her same prescriptions. *Id*. at ¶ 46. Plaintiff alleges that throughout the period of October 2019 through July of 2020, Wexford's medical staff noted her higher-than-normal blood sugar, urea nitrogen, and creatinine levels but failed to properly monitor her diabetic conditions or to order a diabetic diet for her. On July 13, 2020, Plaintiff told medical staff that her right eye was very painful and sensitive to light and that she had difficulty seeing. They diagnosed her with chronic iridocyclitis and retinal edema, but then refused to order the injections recommended by a retina consultant. *Id*. at 15, ¶ 55-56. Wexford medical staff provided Plaintiff with no medical treatment from August through October of 202, and as a result on October 26, 2020, she was diagnosed with congestive heart failure. *Id*. at ¶ 57. By February 22, 2021, Plaintiff's kidney disease had progressed to stage four from stage three in just a few months. *Id*. at 16, ¶ 61.

Plaintiff alleges that she was released from custody on or around May 7, 2021[5], at which point her diabetes-related conditions had become severe and unmanageable because of

---

[5] Plaintiff is vague about the exact date of her release. However, the exact date is important, as her Complaint was filed on May 7, 2024, or about three years after her release. In their motion [Doc. 16 at 7 n.2], the NMCD Defendants assert that Plaintiff's release date was May 5, 2021, which is just two days more than three years before the filing of her complaint. However, as this

Defendants' medical neglect, and that within a year she was diagnosed with renal failure. *Id*. at 16, ¶¶ 62-64.

Plaintiff asserts two causes of action: a claim against all Defendants for deliberate indifference to serious medical needs in violation of her rights under 8th and 14th Amendments, and a claim against Centurion, MHM, Exford, and Summit for having a policy and practice of denial of medical care in violation of the 8th and 14th Amendments. Plaintiff brings both claims under 42 U.S.C. § 1983.

## LEGAL STANDARD

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). *See also Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) ("The medical need must be sufficiently serious to satisfy the objective component."). Objectively serious medical needs are those that have either been diagnosed by a physician and demand treatment or are "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012); *Hunt*, 199 F.3d at 1224. The subjective component requires the plaintiff to allege that the official actually knew of, but disregarded, a substantial risk to the inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 836-38 (1994).

The Supreme Court has stated that for § 1983 claims like the Plaintiff's in this case, courts must apply the analogous residual state limitations period for personal injury tort actions.

---

is a motion to dismiss, for purposes of this Memorandum Opinion and Order the Court accepts Plaintiff's allegation that she was released on May 7, 2021.

*See Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In New Mexico, the personal injury statute of limitations is three years from the time the cause of action accrues. N.M. Stat. Ann. § 37-1-8. The Court of Appeals for the Tenth Circuit has held that "[a]lthough state law determines the applicable statute of limitations period, federal law governs the particular point in time at which a claim accrues. *Kripp v. Luton,* 466 F.3d 1171, 1175 (10th Cir. 2006) (internal quotation marks omitted); *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). Section 1983 claims accrue, for the purposes of the statute of limitations, "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kripp*, 466 F.3d at 1175. *See also Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (stating that an action under Section 1983 accrues, and the statute of limitations period begins to run, "when facts that would support a cause of action are or should be apparent.") (internal citation omitted); *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) ("Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis for the action."). One court in this district has held that a detainee's § 1983 claim that he was deprived of medical care accrues when he knew, or had reason to know, that he was being deprived of adequate and necessary medical care. *Brown v. City of Las Cruces Police Department*, 347 F. Supp. 3d 792, 808 (D.N.M. 2018) (Browning, J.).

This, in light of the objective and subjective elements of Plaintiff's Eighth Amendment claims, those claims accrued when she "knew or had reason to know[,]" *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011), separately for each of the defendants to be liable, that they had acted with deliberate indifference to a known risk to Plaintiff's medical needs, and that his or her deliberate indifference resulted in a delay in treatment that caused Plaintiff substantial harm. *See Bauer v. City & Cnty. of Denver*, 642 Fed. App'x 920, 924 (10th Cir. Mar. 15, 2016)

(unpublished) (holding Eighth Amendment claim accrued when inmate knew he had been denied medical treatment and that he could lose his foot as a result).

## DISCUSSION

I.  **Claims Against Centurion and MHM Defendants**

According to the Complaint, Defendant Centurion, LLC is the parent company of Centurion Correctional Healthcare of New Mexico, LLC, which had a contract with the New Mexico Corrections Department to perform the medical treatment of all prisoners at WNMCF where Plaintiff was incarcerated. Doc. 1 at 3-4, ¶ 9-10. Plaintiff alleges that both companies are responsible for the medical treatment (or lack thereof) she received while Centurion was operating under that contract. *Id*. at 4-5, ¶ 11. She also alleges that Defendant MHM was a subcontractor operating under that contract to supply medical personnel to Centurion to provide medical services to NMCD prisoners, including Plaintiff. *Id*. at 5, ¶ 12. Finally, Plaintiff has sued six persons in their individual capacities whom it alleges were employed by Centurion during the relevant time period and were responsible for the lack of care she received: Steven Wheeler (CEO), Rock Welch (Senior VP of Operations), Jeffrey Keller (Chief Medical Officer), Angel Goehring (Chief Nursing Officer), Karen Riley (Corporate Continuous Quality Improvement Director), and Johnnie Lambert (Clinical Operations Specialist). *See* Doc. 1 at 8, ¶ ¶ 23-28. Centurion has filed a motion to dismiss Plaintiff's claims based on the statute of limitations. As noted above, Defendants Goehring, Welch, Keller, Lambert, and Riley have joined the motion.[6]

---

[6] In addition, Defendants Goehring, Welch, Keller, Lambert, and Riley have filed a separate motion to dismiss for failure to state a claim under Rule 12 [Doc 55]. Similarly, Defendants Michael Hildenbrandt, Keshab Paudel, Sarah Cartwright, and Deannie Wood have filed a motion to dismiss under Rule 12(b)(6) [Doc. 61] which is not yet fully briefed. However, those motions are moot because the Court will dismiss the claims against these defendants as untimely.

7

Centurion argues that claims against it (and by extension, against its employees) are time barred because Plaintiff filed her complaint more than three years after her claims accrued. Doc. 21 at 7. Centurion contends that based on the allegations of the Complaint, Plaintiffs claims accrued no later than November 24, 2019, when Centurion's contract with NMCD ended. In response, Plaintiff argues first that her injuries stemming from lack of medical care were not apparent until after she was released on May 7, 2021, at which point she received a proper diagnosis and prognosis. Second, she contends that the Court should apply New Mexico state law on when her claim accrued, as such law "account[s] for time periods in which a plaintiff must investigate the nature and cause of his or her medical injuries." Doc. 29 at 5.

The Court rejects Plaintiff's second argument. As more fully discussed above, it is well-settled that federal law, not state law, governs when a § 1983 claim accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.") (emphasis in original).

The Court also rejects Plaintiff's first argument, that her claims did not accrue until after her May 2021 release, when she was able to seek health care outside of the WNMCF. Under federal law, the allegations of the Complaint show that her claims against Centurion and the six individual Centurion defendants accrued more than three years before May 7, 2024. Plaintiff alleges that on September 22, 2017, she had diagnoses of diabetes, asthma, thyroid disorder, and blood pressure issues. She alleges that on October 2, 2017, Centurion diagnosed her with uncontrolled hyperglycemia (high blood sugar). However, Centurion did not give her prescribed diabetes medications until December 2, 2017. When it finally administered her medications, they did not reduce her blood glucose levels and Centurion's medical staff failed to act to keep her blood glucose levels at an acceptable level. In January of that year, Centurion medical staff

8

diagnosed Plaintiff with renal tubular acidosis. Plaintiff argues that Centurion's ongoing failures from February of 2019 onward included failure to order her a diabetic diet on a permanent basis and failure to control her blood sugar, and in March of that year they diagnosed her with diabetic mellitus nephrotic syndrome, and worsening renal function, noting her swelling legs and weight gain. Centurion increased one of her prescriptions, but in June of 2019 Plaintiff was suffering from blurred vision. Her blood glucose levels were high, and she was diagnosed with proliferative diabetic retinopathy with macular edema and a vitreous hemorrhage in her right eye. However, Centurion failed to have Plaintiff seen by an appropriate eye specialist, instead merely increasing the dose of one of her existing prescriptions. By September of 2019, Plaintiff reported seeing air bubbles in her eye, but Centurion medical staff merely continued her on her existing diabetes medications until October 19, 2019, when Wexford replaced Centurion. Plaintiff alleges that after that point, her diabetes, kidney condition, and vision problems—including symptoms—continued to deteriorate for the next year and a half.

     Plaintiff does not allege that Centurion and its medical staff (or any other defendant for that matter) hid her diagnoses—including uncontrolled diabetes, kidney disease, and eye disease—from her. Plaintiff does not allege that she thought she was being provided with the proper diet and medications, when in fact she was not. Plaintiff does not allege that she did not know that Centurion was not properly controlling her blood sugar levels. The clear inference from the allegations of the Complaint is that Plaintiff was aware that there were periods of time when Centurion was providing her with inadequate medical care or not providing her with any care at all. And importantly, Plaintiff has alleged that she suffered increasingly concerning symptoms and diagnoses under the Centurion defendants' watch and for 18 months after that. The summary of Plaintiff's allegations summarized in the prior paragraph show that Plaintiff

knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm. In short, under the allegations of the Complaint Plaintiff either knew or should have known that Centurion was acting with deliberately indifference to her medical needs and causing her serious harm as a result.

In this case, her claim accrued once Plaintiff knew Defendants' deliberate indifference caused her substantial harm in the form of kidney damage, eye damages, and worsening of her diabetes, "even though the full extent of the injury [was] not then known or predictable." *Wallace v. Kato*, 549 U.S. 384, 391 (2007) (internal quotation marks omitted). Therefore, Plaintiff's claims against Centurion and its medical staff, including the individual Centurion defendants, accrued well before May 7, 2021. And by extension, Plaintiff's claims against MHM, which allegedly provided medical personnel to Centurion, also accrued by that time. Plaintiff filed her claims against those defendants more than three years later, and therefore they should be dismissed as untimely.

II. **Claims Against the Wexford Defendants**

According to the Complaint, on around October 19, 2019, Defendant Wexford replaced Centurion as the medical provider at WNMCF. Plaintiff has also sued four individual Wexford employees: Michael Hildenbrandt (Director of Operations), Keshab Pautel (Regional Medical Director), Sarah Cartwright (Regional Director of Nursing), and Deanni Wood (Regional Manager of WNMCF). Wexford has filed a motion to dismiss Plaintiff's claims as untimely. As noted above, Defendants Hildenbrandt, Pautel, Cartwright, and Wood have joined in the motion.

Wexford argues that Plaintiff's claims against it are barred by the statute of limitations. First, it contends that through its contract to provide healthcare to state inmates, it is an extension

of the New Mexico Corrections Department and therefore a public entity. As such, Wexford contends that the New Mexico Tort Claims Act's two-year statute of limitations applies. In the alternative, Wexford argues that Plaintiff's claims are untimely under the New Mexico Civil Rights Act's three-year statute of limitations. It then argues that Plaintiff's claims are untimely because they accrued before her release on or about May 7, 2021. In response, Plaintiff correctly notes that § 1983 claims arising in New Mexico are subject to the state's three-year statute of limitations for personal injury claims. Plaintiff then argues that her claims are timely, particularly when the Court applies the continuing violation doctrine "where there is at least one act within the statutory filing period." Doc. 24 at 6. She argues that her claims against Wexford did not accrue until after May 7, 2021, when she sought medical care after her release, at which point Wexford's deliberate indifference to her medical condition became apparent.

      First, the Court declines to apply the continuing violation doctrine to Plaintiff's claims against Wexford and the individual Wexford defendants. The Tenth Circuit has not held that the doctrine applies to Section 1983 cases. Developed in the Title VII discrimination context, the doctrine acknowledges that sometimes "a plaintiff can experience continuing violations or wrongs such that a claim accrues for limitations purposes at the culmination of the continuous injury." *Burkley v. Corr. Healthcare Mgmt. Of Oklahoma, Inc*., 141 F. App'x 714, 716 (10th Cir. 2005) (emphasis in original). Using the doctrine, a court may "look backwards to the entirety of a continuing wrong to assess its cumulative effect, so long as an injurious act falls within the statute of limitations period." *Id*. However, the Tenth Circuit has never declared the doctrine suitable for Section 1983 claims. *See, e.g., Vasquez v. Davis*, 882 F.3d 1270, 1277 (10th Cir. 2018) (discussing the doctrine without applying it); *Colby v. Herrick*, 849 F.3d 1273, 1280 (10th Cir. 2017) (same). In its review of other circuits' adoption of the doctrine for Section 1983 cases,

11

the Tenth Circuit noted that, were it to apply, it is "triggered by continuing unlawful acts but not by continuing damages from the initial violation." *Vasquez*, 882 F.3d at 1277 (emphasis supplied; quoting *Colby*, 849 F.3d at 1280); *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011) (internal quotation marks omitted) (noting that even if the doctrine applied to § 1983 claims, it only is "triggered by continual unlawful acts, not continual ill effects from the original violation.").

In some older decisions, the Tenth Circuit has suggested that the continuing violation doctrine might apply in § 1983 cases. For example, in *Burkley v. Correctional Healthcare Management of Okla., Inc.*, 2005 WL 1595699 at **2, 141 Fed. Appx. 714, 716 and n.2 (10th Cir. Jul. 8, 2005), the court assumed without deciding that the doctrine applies, noting that some other circuits had applied the doctrine in § 1983 cases. *Id*. (citing *Heard v. Sheahan*, 253 F.3d 316, 320 (7th Cir. 2001) (collecting cases)). But more recently, the Tenth Circuit has stated that a claim of deliberate indifference to medical needs accrues when the plaintiff "had a complete and present cause of action; that is, when he could have filed suit and obtained relief." *Vasquez v. Davis*, 882 F.3d 1270, 1276 (10th Cir. 2018) (internal quotation omitted) (citing *Wallace v. Cato*, 549 U.S. 384, 388 (2007)). There may be good public policy reasons to adopt the continuing violation theory in Section 1983 cases where, for whatever reason, a plaintiff did not know and could not have known of her injury and the cause of it within the three-year limitations period. However, this is not that case here—plaintiff has alleged no facts to support the conclusion that she did not and could not know of the Defendants' alleged deliberate indifference to her medical needs. The Court declines to apply the continuing violation theory.

As previously outlined above, according to the allegations of the Complaint Plaintiff knew or should have known that she had serious medical conditions that were not being treated

properly in October of 2019, when Wexford replaced Centurion as the medical provider at WNMCF. She alleges that in December of that year, Wexford medical staff failed to prescribe her with a diabetic diet, Doc. 1 at 14 ,¶ 48, saw her infrequently, and failed to adequately monitor her diabetic conditions and medications. *Id*. at ¶ 49. Plaintiff alleges that this neglect continued over the following months as her conditions continued to deteriorate, and Wexford failed to respond appropriately. *Id*. at 14-15, ¶ ¶ 50-53, 56-59. She alleges that by February 22, 2021, her kidney disease had increased from stage 3 to stage four due to Wexford's medical neglect. *Id*. at 16, ¶ 61. Based on these allegations, the Court concludes that Plaintiff either knew or should have known that the Wexford defendant's indifference to her medical needs had caused her serious harm no later than February 22, 2021. As with the Centurion defendants, there is nothing in the Complaint to indicate that the Wexford defendants hid this information from her or that she could not have known of the harm. Therefore, her claims against the Wexford Defendants, including Defendants Wexford Health Sources, Inc., Hildenbrandt, Pautel, Cartwright, and Wood, are untimely and will be dismissed.

### III.    Claims Against Summit Food Service

Defendant Summit Food Service ("Summit") also moves to dismiss on statute of limitations grounds. Plaintiff alleges that Summit contracted with NMCD to provide food services to its facilities, including WNMCF, during the time Plaintiff was incarcerated there. Doc. 1, at 6, ¶ 15. She alleges that on February 1, 2019, Centurion medical staff ordered Summit to provide her with a diabetic diet, but only for the next 30 days. *Id*. at 11, ¶ 37. Plaintiff asserts that during that period the diet Summit gave her was not appropriate for diabetics, as it was no different from the diet provided to other prisoners, and that it did so as part of its longtime

pattern and practice of providing inappropriate food to diabetics. *Id*. at 12, ¶ 38. Later in the Complaint, Plaintiff makes a second allegation against Summit, asserting that on August 1, 2019, Centurion medical staff prescribed her a diabetic diet for 90 days, and that again Summit failed to provide her with medically appropriate food, worsening her diabetes-related conditions. *Id*. at 13, ¶ ¶ 44-45. Plaintiff does not allege that Summit had either the ability or a duty to diagnose her medical conditions or to provide her with a diabetic diet outside the two limited periods for which it was prescribed by medical staff. She does not allege that Summit had the discretion to provide inmates with any special diet that had not been prescribed.

Summit points out that according to the Complaint, the last time it received orders to provide Plaintiff with a diabetic diet was on August 1, 2019, when medical staff ordered diabetic food for Plaintiff for a 90-day period ending November 1, 2019. Plaintiff alleges that the meals Summit provide her during this time were not medically appropriate. Doc. 1 at 13, ¶¶ 44-45. There are no other allegations against Summit after this time. As a result, Summit argues that Plaintiff knew she was not being provided with a diabetic diet after that date because according to her Complaint, "the diabetic meals were essentially the same as the non-diabetic meals." Doc. 1 at 12, ¶ 38. Accordingly, Summit argues that Plaintiff's claims against it are untimely as they were filed more than three years after November1, 2019. In response [Doc. 33], Plaintiff argues again that the Court should apply the continuing violation doctrine, asserting that "Defendants had been preventing [Plaintiff] from obtaining such prognoses and diagnoses during her period of incarceration." Doc. 33 at 6. However, there are no factual allegations in the Complaint to support that assertion in Plaintiff's brief. In fact, the allegations of the Complaint strongly suggest that Plaintiff knew or should have known throughout her incarceration that her medical dietary needs were not being addressed by Summit. Plaintiff also repeats her flawed argument

14

asking the Court to apply New Mexico state law on accrual of actions. For the same reasons previously discussed, the Court is not persuaded by these arguments. Plaintiff's claims against Summit should be dismissed as untimely.

### IV.   Claims Against NMCD Defendants

The NMCD Defendants are three individuals who worked for the New Mexico Department of Corrections while Plaintiff was incarcerated at WNMDC. Plaintiff alleges that Alisha Tafoya Lucero was the Secretary of the Department of Corrections, Wence Asonganyi was the Health Services Administrator for NMCD, and Orion Stradford was the NMCD Bureau Chief. Doc. 1 at 6-7, ¶¶ 16-18.

Like the others, the NMCD Defendants also argue that Plaintiff's claims against them are time-barred, advancing the same arguments as their co-defendants—that Plaintiff's claims accrued when she knew or should have known of her injuries due to inadequate medical care, even if she did not yet know the full extent of her injuries. Doc. 16 at 6-7.  In addition, they argue that the focus should be on when the constitutional violation occurred, which in this case is during Plaintiff's incarceration, more than three years before she filed her complaint. The NMCD Defendants note that the date of the last factual allegation in the Complaint pertaining to Plaintiff's medical care while incarcerated relates to February of 2021. Doc. 16 at 7; Doc. 1 at 16, ¶ 61. As with her other responses, Plaintiff relies upon the continuing violation theory and New Mexico law. And for the same reasons set forth above, the Court rejects those arguments. Under federal law, Plaintiff's claims accrued prior to May 7, 2021, when she knew or should have known that Defendants were deliberately indifferent to her medical needs and she suffered

serious harm as a result. Thus, Plaintiff's claims against NMCD Defendants will also be dismissed as untimely.

## V.   Other Issues

The motions filed by Defendants raise other issues, including arguments that Plaintiff's Complaint fails to state a claim or that certain Defendants are entitled to immunity. Having concluded that the claims against all Defendants should be dismissed as untimely, the Court need not reach these issues. Defendants Jeffery Keller, Rock Welch, Angela Goehring, Karen Riley, and Johnnie Lambert's motion to dismiss for failure to state a claim [Doc. 55], and Defendants Hildenbrandt, Paudel, Cartwright, and Wood 's Motion to Dismiss in Lieu of an Answer [Doc. 61] will be denied as moot.

**IT IS THEREFORE ORDERED that**:

(1)   the motion to dismiss by Defendant Wexford Health Sources, Inc. **[Doc. 11]** and joined by Defendants Michael Hildenbrandt, Keshab Paudel, Sarah Cartwright, and Deannie Wood is **GRANTED**;

(2)   the motion to dismiss by Defendants Alisha Tafoya Lucero, Wence Asonganyi, and Orion Stradford **[Doc. 16]** is **GRANTED**;

(3)   the motion to dismiss by Centurion Correctional Healthcare of New Mexico, LLC, **[Doc. 21]** and joined by Defendants Angela Goehring, Rock Welch, Jeffery Keller, Johnnie Lambert, Karen Riley, and Centurion, LLC is **GRANTED**;

(4)   the motion by Defendant Summit Food Service, LLC, **[Doc. 27]** to dismiss is **GRANTED**;

(5)     Defendants Jeffery Keller, Rock Welch, Angela Goehring, Karen Riley, and Johnnie Lambert's motion to dismiss for failure to state a claim **[Doc. 55**] is **DENIED AS MOOT;** and

(6)     Defendants Hildenbrandt, Paudel, Cartwright, and Wood 's Motion to Dismiss in Lieu of an Answer **[Doc. 61]** is **DENIED AS MOOT**.

_____
SENIOR UNITED STATES DISTRICT JUDGE